RED BALL TRANSIT CO. v. MARSHALL et al., Public Utilities Commission of Ohio.

(District Court, S. D. Ohio, E. D. October 19, 1925.)

No. 382.

**1. Carriers** ⬅️18(6)—**Action to restrain criminal prosecution held properly brought against Public Utilities Commission.**

Action to restrain numerous criminal prosecutions for purpose of enforcing Ohio Motor Transportation Act, was properly brought against members of the Public Utilities Commission, as against the commission's objection that the prosecutions were being initiated by state officials over which it had no control; it being commission's duty to enforce provisions of the act, and it being unlikely that other state officials would proceed criminally, unless advised by commission that plaintiff was amenable to the act and had not complied therewith.

**2. Carriers** ⬅️18(6)—**Public Utilities Commission's unlawful attempt to interfere with transportation company held subject to injunctive relief.**

If transit company organized to carry on business of transportation by motor truck of personal property was not subject to provisions of Ohio Motor Transportation Act, the Public Utilities Commission of Ohio had no jurisdiction over it, and latter's attempt to interfere with its business was subject to injunctive relief.

**3. Carriers** ⬅️18(6)—**Transit company held, under facts, not to have carried burden to show that it was not within Ohio Motor Transportation Act.**

Transit company, incorporated under laws of foreign state to transport and contract for transportation by motor truck of chattel property, held, in view of facts, not to have carried burden on it to show that its mode of operation and character of business was not motor transportation company contemplated by Ohio Motor Transportation Act (Gen. Code, § 614–84, as amended by 111 Ohio Laws, p. 515).

**4. Carriers** ⬅️18(6)—**Burden held to be on corporation to show it was not motor transportation company, as contemplated by Ohio law.**

To sustain claim of foreign transit company that it was not subject to Ohio Motor Trans-

portation Act (Gen. Code, §§ 614—2, 614—84, as amended by 111 Ohio Laws, pp. 513, 515), burden was on it to show that, under its mode of operation and character of its business, it was not a transportation company such as was contemplated by the law.

**5. Commerce ⚖61(1)—Ohio Motor Transportation Act held invalid in so far as it denied certificate to carrier in interstate commerce.**

Ohio Motor Transportation Act (Gen. Code, § 614—84, as amended by 111 Ohio Laws, p. 515), in so far as it permits denial of certificate of public convenience and necessity to common carrier, purely in interstate commerce, *held* unconstitutional.

**6. Constitutional law ⚖42—One not injured cannot complain of unconstitutionality.**

One cannot complain of a statute as unconstitutional, if its existence in no way affects his rights.

**7. Commerce ⚖63—State may exact compensation from corporation engaged in interstate commerce, if burden imposed be reasonable.**

Notwithstanding that state, which has furnished public highways for use of those engaged in intrastate and interstate commerce, may exact compensation therefor, and if charges are reasonable and uniform, they constitute no burden on interstate commerce, yet burden so imposed must of necessity be reasonable.

**8. Commerce ⚖63—Amount of license fee or privilege tax imposed by state not necessarily limited to actual cost of regulation.**

Amount of license fee or privilege tax imposed by state statute for use of highways need not necessarily be limited, even to those engaged in interstate traffic, to actual cost of regulation, but may include reasonable compensation for use of highways and repairs thereof.

**9. Commerce ⚖61(1)—Ohio Motor Transportation Act held invalid, in so far as it required liability insurance bond from interstate carrier.**

Ohio Motor Transportation Act (Gen. Code, § 614—99, as amended by 111 Ohio Laws, p. 519), providing that no certificate of convenience and necessity shall issue until company files satisfactory liability insurance policy or bond upon terms specified, *held* invalid in so far as applicable to interstate traffic.

**10. Courts ⚖489(2)—Federal court held without jurisdiction to restrain Public Utilities Commission from prosecuting for violations of Motor Transportation Act of Ohio.**

Where complainant failed to bring itself within class not amenable to provisions of Ohio Motor Transportation Act, which was held by Ohio Supreme Court to be constitutional at least as to intrastate commerce, federal court has no jurisdiction to interfere with the Public Utilities Commission in its prosecutions for violations of the act.

In Equity. Suit by the Red Ball Transit Company against Charles C. Marshall and others, constituting the Public Utilities Commission of Ohio. Case dismissed.

Harmon, Colston, Goldsmith & Hoadly, of Cincinnati, Ohio, and C. M. Addison, of Columbus, Ohio, for plaintiff.

C. C. Crabbe, Atty. Gen., and John W. Bricker, of Columbus, Ohio, for defendants.

Before DONAHUE, Circuit Judge, and WESTENHAVER and HOUGH, District Judges.

PER CURIAM. Complainant, upon its amended complaint, asks injunctive relief against the Public Utilities Commission of Ohio, its agents, attorneys, and representatives, and all persons acting for and in combination with them, or any of them, from instituting or carrying on any criminal prosecution against complainant or complainant's agents while in the transaction of complainant's business, under the pretense that complainant or its agents is violating the Motor Transportation Act of the state of Ohio. The immediate remedy asked was the issuance of a preliminary injunction by this court as constituted. By oral stipulation in open court the case was submitted upon an application for an interlocutory order, and also upon the merits. Thereupon the submission was had upon the issues made by the pleadings, the commission's answer having been filed, upon stipulations, affidavits, transcript of the proceedings of the Board of Public Utilities, oral argument, and briefs.

The complainant company is an Indiana corporation, having its principal place of business at Indianapolis, Ind., and organized for the purpose of carrying on a business, to wit, among other things, "the transportation and contracting with others for transportation by motor truck or otherwise, of household furniture, or any other kind of personal property." In the pursuit of such business the company has and is engaged in the transportation of household goods and other personal property for hire, over the public highways and over irregular routes, from points outside of the state of Ohio to points within the state of Ohio, and from points within the state of Ohio to points without the state of Ohio, and from points within the state of Ohio to other points within the state of Ohio. In the pursuit of such business it has also established branch places of business, or offices, in the cities of Cincinnati, Dayton, Columbus, Toledo, and Cleveland, within the state of Ohio, and has advertised its business in the newspapers and otherwise.

Complainant in this case contends that it is in no way subject to the regulatory provisions of the Ohio Motor Transportation Law, and the relief sought is to prevent the defendant commission from enforcing the penalty provisions of that Act against it. The defendant commission contends that the complainant is subject to the provisions of the Ohio Motor Transportation Law, and that therefore the commission is within its rights when it seeks to enforce said law and the penalty provisions thereof. There was introduced in proof at the hearing the proceedings heretofore had before the Public Utilities Commission, in which the following appears:

The complainant company first filed an application for a certificate of public convenience and necessity, under section 614-87, General Code, as added by 110 Ohio Laws, p. 215, as a matter of right, claiming to have succeeded to a going business. The commission refused, upon a hearing, to grant the certificate. The complainant company appealed to the Supreme Court of the state, wherein the order of the commission was approved and affirmed. Red Ball Transit Co. v. Public Utilities Commission of Ohio, 112 Ohio St. 399, 147 N. E. 762.

On the 1st day of October, 1924, and again on the 12th day of May, 1925, the complainant filed an application for a certificate of public convenience and necessity with the commission. Hearing was had thereunder, and a certificate of public convenience and necessity was issued to the complainant company to carry on interstate business, and the commission further found that the applicant failed to produce proof that there was any public need or demand for its irregular transportation facilities, and denied the company a certificate of public convenience and necessity for the transaction of intrastate business.

The two applications above referred to stated that the complainant company was a corporation and was a motor transportation company. Subsequently said company notified the commission that the company was not a common carrier, within the purview of the Acts of April 28, 1923 (110 Ohio Laws, p. 211), and of April 17, 1925 (111 Ohio Laws, p. 512), the State Motor Transportation Law, and that it could not accept the certificate of the character and upon the condition granted by the commission. The complainant company continues to claim that it is not a common carrier, and is not a transportation company of the kind and character to be regulated under the Transportation Law.

The commission thereupon revoked the certificate of convenience and necessity covering the interstate business, but is ready and willing to reissue the certificate for that character of service at any time the company will accept it by complying with its requirements. Having asked to be brought within the provisions of the Motor Transportation Law as a motor transportation company, and that permission denied as to intrastate business and granted as to interstate business, and the latter in turn declined, the complainant's equity is none too strong, unless it clearly appears that its constitutional rights are being invaded.

[1] The defendants deny that they are causing or threatening the arrest of the plaintiff's agents or employees, and further aver that these criminal prosecutions are being initiated by officials of the state, over which it has no control. However that may be, it is the duty of this commission to enforce the provisions of the Motor Transportation Act, and the presumption obtains that it will do its duty in this respect; nor is it at all likely that any other officials of the state will instigate such criminal proceedings, unless advised by this commission that the plaintiff is amenable to the provisions of the Motor Transportation Act and has not complied therewith. For this reason we think this action to restrain numerous criminal prosecutions for the purpose of enforcing the provisions of this act is properly brought against these defendants. The Motor Transportation Act of 1923 has been held to be constitutional by the Supreme Court of Ohio. Red Ball Transit Co. v. Public Utilities Commission, 112 Ohio St. 399, 147 N. E. 762. By the amendment of 1925 no new question of constitutionality is presented, covering the questions passed upon by the state Supreme Court in this case.

[2] If the complainant company is subject to the provisions of the Motor Transportation Law, the Public Utilities Commission has jurisdiction over it, and its orders are reviewable by the Supreme Court of the state. This is the procedural legislative policy of the state of Ohio, and is exclusive and final, and furnishes an adequate remedy at law, preventing interference by this court, and, if the company is not subject to the provisions of that act, the Commission has no jurisdiction over it, and an attempt to interfere with its business is the subject for injunctive relief.

[3] The essential question to be answered, then, is: Does this company come under its provisions? Section 614—2 of the Motor Transportation Law, as amended by 111 Ohio Laws, p. 513, in so far as applicable, provides as follows:

"Any * * * company, * * * when engaged in the business of carrying and transporting persons or property, or both as a common carrier, for hire, in motor propelled vehicles of any kind whatsoever, under private contract or for the public in general, over any public street, road or highway in this state, except as otherwise provided in section 614—84 is a motor transportation company; when engaged in the business of carrying and transporting persons or property, or both, in motor propelled vehicles of any kind whatsoever, for hire, under private contract, but not as a common carrier, over any public street, road or highway, in this state is a private contract carrier. * * * "

Section 614—84, as amended by 111 Ohio Laws, p. 515, in so far as applicable, provides as follows:

"The term 'motor transportation company,' when used in this chapter, means every corporation * * * owning, controlling, operating or managing any motor propelled vehicles not usually operated on or over rails, used in the business of transportation of persons or property, or both, as a common carrier, for hire, under private contract or for the public in general, over any public highway in this state: Provided, however, that the term 'motor transportation company' as used in this chapter shall not include any private contract carrier, as defined in section 614—2, and shall not include, any * * * company * * * which are operated exclusively within the territorial limits of a municipal corporation, or * * * [one] immediately contiguous thereto, or * * * for the private business of the owners and the use of which for hire is casual and disassociated from such private business. * * * "

These legislative definitions are not helpful. In order to determine whether a given corporation is a motor transportation company, it is necessary to determine whether it is a common carrier, and this determination is left to rest, as a question of fact, under the common law.

The United States Supreme Court, as well as our Court of Appeals, has held that, in the absence of national legislation covering the subject, the state may rightfully prescribe uniform regulations necessary for public safety and order in respect to the operation upon its highways of all motor vehicles, those moving in interstate commerce as well as others, and that reasonable graduated license fee imposed by the state on motor vehicles used in interstate commerce does not constitute a direct burden on interstate commerce, and that a state, which at its own expense furnishes special facilities for the use of those engaged in intrastate and interstate commerce, may exact compensation therefor, and, if the charges are reasonable and uniform, they constitute no burden on interstate commerce. Hendrick v. Maryland, 235 U. S. 610, 35 S. Ct. 140, 59 L. Ed. 385; Kane v. New Jersey, 242 U. S. 160, 37 S. Ct. 30, 61 L. Ed. 222; Liberty Highway Co. v. Michigan P. U. C. (D. C.) 294 F. 703.

The same court subsequently held that a state law, imposing upon all persons engaged in transportation for hire, by motor vehicle, over public highways, the burdens and duties of common carriers as applied to a private carrier, without special franchise or power of eminent domain and engaged exclusively in the hauling from a place within the state to a place in another state, was unconstitutional, and to convert property of a private carrier into a public utility, or to make the owner thereof a public carrier, was beyond the power of the state. Michigan Commission v. Duke, 266 U. S. 570, 45 S. Ct. 191, 69 L. Ed. 445, 36 A. L. R. 1105. Likewise the Supreme Court of the state of Ohio, in a recent case dealing with intrastate transportation, have announced that:

"The owner of a motor-propelled vehicle engaged in the business of carrying and transporting property in such vehicle for hire over the highways of this state, pursuant to a definite contract describing the property to be carried and the points to and from which the same shall be carried and the compensation to be paid, such owner not holding himself out to the public as willing to carry property for other persons * * * than those with whom he has thus contracted, and not operating under any public franchise, is not a common carrier, and is not a motor transportation company as that term is defined in section 614—2 and 614—84, General Code." Hissem v. Guran and Others, 112 Ohio St. 12, 146 N. E. 808.

The conclusions arrived at by the Supreme Court of the United States and the Supreme Court of Ohio in these two last-mentioned cases depended upon the determination of the fact that the parties involved were private carriers, as distinguished from public or common carriers. The carriage was in specifically defined merchandise for definite par-

ties, and none others. A very different set of facts appear in relation to the Red Ball Transit Company. It is in the business of motor transportation. It advertises itself to be in that business. It holds itself out to contract for the carrying of certain classes of merchandise. It offers an optional contract to its prospective patrons, and permits them to choose which of the contracts is desirable. There is no proof that it denies haulage to any one who offers to contract. True, it makes the bare statement that it may decline any contract that may be offered. This is not persuasive, however, in view of the surrounding facts and circumstances. Of course, it has no right of eminent domain, nor does it need such. It has no franchise, but it has applied for the franchise or rights under the motor transportation law; that is, its right to carry on its business over the highways of the state. 4 R. C. L. 557; Nolen v. Reichman (D. C.) 225 F. 812, 818.

[4] To sustain its claim in this case, the burden is upon it to show that under its mode of operation, and the character of its business, it is not a motor transportation company, such as is contemplated by the Motor Transportation Law of Ohio. It must bring itself under and within the class of private carriers such as were found and dealt with in the Duke and Hissen Cases. This it has failed to do.

[5, 6] In the case of Buck v. Kuykendall, 267 U. S. 307, 45 S. Ct. 324, 69 L. Ed. 623, the Supreme Court of the United States, speaking through Justice Brandeis, holds that a state law which permits the denial of a certificate of public convenience and necessity to a common carrier of passengers and express, purely in interstate commerce, is unconstitutional. The Ohio Motor Transportation Law permits this to be done, and under the decision of the Buck Case is unconstitutional in such respect; but the power of the Utilities Commission to deny the issuance of such certificate has not been exercised, and is not being threatened, and although complainant would not be estopped from assailing it as unconstitutional; if its rights were infringed thereby, it cannot be heard to complain if its existence in no way affects its rights.

[7, 8] While it has been settled beyond peradventure that a state which has furnished special facilities, such as public highways, for the use of those engaged in intrastate and interstate commerce, may exact compensation therefor, and, if the charges are reasonable and uniform, they constitute no burden on interstate commerce, yet, on the other hand, the burdens so imposed must of necessity be reasonable. The amount of the license fee or privilege tax imposed by a state statute for the use of its highways need not necessarily be limited, even to those engaged in interstate traffic, to the actual cost of regulation, but may include reasonable compensation for the use of the highways and repairs thereof. Liberty Highway Co. v. Michigan P. U. C. (D. C.) 294 F. 703, 708; W. U. T. Co. v. New Hope, 187 U. S. 419, 23 S. Ct. 204, 47 L. Ed. 240; Kane v. New Jersey, supra.

On the other hand, the same decisions have specified some requirements to be unreasonable, and therefore burdensome, in respect to interstate commerce. This is true in the Liberty Case, supra, where it held that the provisions of a state statute for licensing and regulating common carriers by motor vehicle on its highways, which have no reasonable relation to the use of such highways, as a provision requiring carriers to provide insurance or indemnity bonds for the protection of persons or property carried, are invalid, and in the Duke Case supra, page 577 (45 S. Ct. 193), it is stated: "Clearly, these requirements [one of which is for indemnity bonds] have no relation to public safety or order in the use of motor vehicles upon the highways, or to the collection of compensation for the use of the highways."

[9] Section 614—99, General Code as amended by 111 Ohio Laws, p. 519, is a part of the Motor Transportation Law, and provides that no certificate of convenience and necessity shall issue until the company shall have filed a satisfactory liability insurance policy or bond upon terms therein specified. This section of the act, under the decisions just quoted, must be held to be invalid, in so far as it is applicable to interstate traffic.

The commission has been willing to issue a certificate of necessity and convenience to the complainant covering interstate traffic, and although there is no evidence to determine how the restrictions of this holding will affect that willingness, it must be presumed that the Commission will act in accordance therewith.

[10] Inasmuch as the complainant has failed to bring itself within the class not amenable to the provisions of the Motor Transportation Law, and inasmuch as the Supreme Court of Ohio has held the law to be constitutional, at least in so far as it applies to intrastate commerce, and therefore this court has no jurisdiction to interfere therewith, and the commission being willing to issue a certificate of necessity and

convenience to the complainant, and it being presumed that it will continue to be willing under the restrictions of this opinion, the relief asked by the complainant must be denied.

The case, therefore, is dismissed, at the cost of complainant.