GRUBB v. PUBLIC UTILITIES COMMISSION OF OHIO et al.

District Court, S. D. Ohio, E. D. May 18, 1929.

No. 627.

John F. Carlisle and Frank M. Raymond, both of Columbus, Ohio, and E. D. Ricketts, of Logan, Ohio, for plaintiff.

Gilbert Bettman, Atty. Gen., and T. J. Herbert, of Cleveland, Ohio, for Public Utilities Commission.

Blair & Ball, of Portsmouth, Ohio, for Cannon Ball Transportation Co. and Interstate Motor Transit Co.

A. R. Johnson, of Ironton, Ohio, for Ohio Valley Bus Co.

Miller & Searl, of Portsmouth, Ohio, for Portsmouth Public Service Co.

Before MOORMAN and HICKENLOOPER, Circuit Judges, and HOUGH, District Judge.

HOUGH, District Judge. The plaintiff, J. P. Grubb, filed his complaint in equity, to restrain and prevent the enforcement of an order of the Public Utilities Commission of Ohio, which order prohibited plaintiff as a common carrier from operating motorbusses for hire in interstate commerce between Portsmouth, Ohio, and South Portsmouth, Ky., and return, crossing and recrossing the bridge over the Ohio river, connecting said municipalities, which was part of a route from Columbus, Ohio, through the states of Ohio, Kentucky, and West Virginia; and for further enjoining all the defendants from interfering with the operation of plaintiff's automobile busses while traveling said route, and particularly crossing and recrossing the river bridge and approaches thereto between Portsmouth, Ohio, and South Portsmouth, Ky. The suit is brought under paragraphs 1 and 8 of section 24, as amended, of the Judicial Code of the United States (28 USCA § 41, pars. 1, 8). He claims that the order of the Public Utilities Commission of Ohio is an unlawful exercise of police powers, and is a prohibition of interstate commerce and an unwarranted obstruction of commerce between states and contrary to the commerce clause of the Constitution of the United States, to wit, section 8 of article 1 of said Constitution.

On January 23, 1928, Grubb filed application with the Public Utilities Commission of Ohio, for a certificate of convenience and necessity, describing in detail the route above mentioned, which application was heard by the commission on March 13, 1928. On April 2, 1928, the application was granted and allowed by the commission, except the loop from Portsmouth, Ohio, across the river bridge to South Portsmouth, Ky., and return, which was by said order in effect disallowed. Subsequently an application for a rehearing was filed, and on the 17th of April, 1928, this application was overruled.

The plaintiff began this suit on the 20th of April, 1928, and on May 31, 1928, he filed in the Supreme Court of Ohio his petition in error, seeking to reverse the Public Utilities Commission in its refusal to permit him to cross and recross the bridge between Portsmouth and South Portsmouth (544, Gen. Code). Among other errors complained of in the petition in error, the plaintiff says that the part of the order of the commission refusing permission to cross and recross between the two municipalities is contrary to law, and that it denies to him the rights, privileges, and immunities guaranteed him as a citizen of the United States under the Fourteenth Amendment to the Constitution of the United States, and is in direct violation of section 8, art. 1, of the Federal Constitution, granting power to Congress to regulate commerce among the several states, and is a prohibition of, burden on, and an unlawful interference and restriction to, interstate commerce.

The review to the Supreme Court of Ohio was argued and submitted to that court on October 3, 1928, and on November 14, 1928, the Supreme Court affirmed the Public Utilities Commission.

The defendants in this case other than the Public Utilities Commission, and except the public peace officers named as defendants, filed their answers to the bill of complaint, denying among other things the unlawfulness and unconstitutionality of the action and final order of the commission, wherein it failed and refused to include, in the certificate of convenience and necessity issued, that part of the route applied for over the river bridge and between Portsmouth and South Portsmouth. The case was heard by the court upon the pleadings, proof, and argument, and taken under advisement.

Subsequently, and after the announcement of the decision of the Supreme Court of Ohio, the defendants asked and were granted leave to file their separate supplemental answers, and the defendant Public Utilities Commission, upon leave granted, filed its original answer, all pleading the decision and judgment of the Supreme Court of the State upon review of the finding and order of the Public Utilities Commission.

Later, a further hearing was had in the instant case, wherein evidence was offered and received, substantiating the allegations of the supplemental answers. There is then

before this court the transcript and record of the case that was before the Supreme Court, and upon which that court arrived at its judgment.

We are therefore confronted with the question as to whether the disposition of the case by the Supreme Court (Grubb, etc., and Interstate Motor Transit Co. v. Public Utilities of Ohio, 119 Ohio St. 264, 163 N. E. 713) is a bar in this court; that is to say, whether that court's judgment is res adjudicata or an estoppel in this court. This question is entirely independent of the question of the jurisdiction of this court and one lately made by supplemental pleading and proof.

It is urged by the plaintiff that after the final action of the Board of Public Utilities, he was entitled to choose his own forum. We may assume that he is correct in that view, but it seems that he has gone further and chosen more than one forum. He selected this court on April 20th, when he filed his bill of complaint, and then chose the Supreme Court of Ohio when he filed his petition in error on May 31st. As to the latter selection, his right to review is provided by section 544, Gen. Code, as follows: "A final order made by the Commission shall be reversed, vacated, or modified by the Supreme Court, on a petition in error, if upon consideration of the record such court is of the opinion that such order was unlawful and unreasonable."

■ The high court of the state neither reversed, vacated, or modified the final order of the commission, but instead affirmed it. This means that it found the acts of the commission lawful and reasonable. Nor can it be said that the court did not have before it the question of the lawfulness of the order, in view of the fact that the plaintiff's petition in error in his assignments of error made the allegation both that the final order of the commission in eliminating the loop was contrary to the law and contrary to the guaranties contained in the Federal Constitution, as mentioned above. And, although that court in its opinion (119 Ohio St. 264, 163 N. E. 713) failed to deal with the illegality of the commission's action and findings in relation to the constitutional guaranties and limitations, yet the power and duty given it by the statute in such cases and the raising of that question by the plaintiff in his pleadings results in the conclusion that the Supreme Court passed upon all questions that were before it, and its judgment must be interpreted to include a finding that the acts and orders of the commission were such as not to invade the constitutional rights of the plaintiff Grubb.

■ The doctrine of estoppel by judgment or res adjudicata as a practical matter proceeds upon the principles that one person shall not a second time litigate with the same person, or with another so identified in interest with such person that he represents the same legal right, precisely the same question, particular controversy or issue, which has been necessarily tried and finally determined upon its merits by a court of competent jurisdiction in a judgment in personam in a former suit. U. S. v. California Bridge Co., 245 U. S. 337, 341, 38 S. Ct. 91, 62 L. Ed. 332; Hopkins v. Lee, 6 Wheat, 109, 113, 5 L. Ed. 218; Southern Pacific R. Co. v. U. S., 168 U. S. 1, 48, 18 S. Ct. 18, 42 L. Ed. 355; Bigelow v. Old Dominion Copper Mining Co., 225 U. S. 111, 127, 32 S. Ct. 641, 56 L. Ed. 1009, Ann. Cas. 1913E, 875.

As is said by the Federal Supreme Court in the case of Postal Telegraph Cable Co. v. City of Newport, 247 U. S. 464, 476, 38 S. Ct. 566, 570 (62 L. Ed. 1215) : "The doctrine of res judicata rests at bottom upon the ground that the party to be affected, or some other with whom he is in privity, has litigated or had an opportunity to litigate the same matter in a former action in a court of competent jurisdiction."

■ Nor can a fact or right distinctly adjudged be disputed in a subsequent action between the same parties, even upon another demand, and although the original determination was reached upon an erroneous view or application of the law. U. S. v. Moser, 266 U. S. 236, 45 S. Ct. 66, 69 L. Ed. 262.

The court of this district (Donahue, Circuit Judge, Sater and Hickenlooper, District Judges, sitting) had before it the question of res adjudicata in the case of Van Wert Gaslight Co. v. Public Utilities Commission (D. C.) 299 F. 670, wherein that court found that the doctrine of res adjudicata did not apply, but on page 675 of its opinion made the following pertinent observations: "At the time of these error proceedings, however, there had been no confiscatory act, because the rate had not yet been fixed, and, non constat, the commission would still fix a rate which would afford a reasonable return upon the larger value of plaintiff's property, and no Federal question had theretofore arisen which would permit the issuance of a writ of error from the Supreme Court of the United States to the Supreme Court of Ohio. The question is therefore presented whether, even assuming the absence of the right to prosecute error, the complainant is nevertheless estopped by the judgment of the Supreme Court of Ohio to again litigate the question

of valuation in another court, either directly or as a part of a broader cause of action involving it. Had this matter of valuation been the subject of judicial review in the Supreme Court of Ohio, and such finding of the Public Utilities Commission upon this question been affirmed, an estoppel by judgment would arise, which would preclude the re-examination of this question in any other tribunal, as between these same parties. Such judicial examination of the question would operate as an extoppel as to every issue and point controverted, upon the determination of which the judgment of the court was rendered."

█ The procedure provided by section 544, Gen. Code, and adopted by the plaintiff in bringing his case before the Supreme Court for reviewing, brought to that court a judicial issue to be tried by a judicial tribunal. Hocking Valley Ry. Co. v. Public Utilities Commission, 100 Ohio St. 321, 126 N. E. 397. In exercising revisory jurisdiction of the proceedings of the administrative board, that court by its own interpretation exercised judicial functions.

█ The Public Utilities Commission is a defendant in both cases; the other answering defendants in the instant case are competing transportation companies, who were protestants before the Public Utilities Commission, and who thereafter filed proceedings in the Supreme Court to review the final order of the commission. This case was consolidated with the Grubb Case in the Supreme Court, and decided under the same opinion of the court. 119 Ohio St. 264, 163 N. E. 713. Therefore there is an identity of parties in the litigation in both courts, and as we have seen from the discussion above, there is also an identity of subject-matter. Nor can there be any question concerning the jurisdiction of the Supreme Court or of this court. The elements are all present to put in effect the doctrine of estoppel or res adjudicata.

The fact that the instant case was begun in this court prior to the institution of the proceedings in error in the Supreme Court will not preclude application of the doctrine of estoppel. Chicago, Rock Island & Pacific Ry. Co. v. Schendel, Adm'r, 270 U. S. 611, 46 S. Ct. 420, 70 L. Ed. 757, 53 A. L. R. 1265. It is the fact that the proceeding in error in the Supreme Court developed into a final judgment while the case in this court was still pending, with all the necessary elements of the doctrine present, that constitutes the bar.

The case is dismissed, at the cost of the complainant.