STATE of North Dakota, ex rel. NORTHERN PACIFIC TRANSPORT COMPANY, a corporation, Plaintiff and Respondent,

v.

PUBLIC SERVICE COMMISSION of the State of North Dakota, and Anson J. Anderson, Ernest D. Nelson and Martin Vaaler, as Members of the Public Service Commission of the State of North Dakota, Defendants and Appellants.

No. 7678.

Supreme Court of North Dakota.

April 25, 1957.

Charles L. Murphy, Sp. Asst. Atty. Gen., for appellants.

E. T. Conmy, Jr., Fargo, Frank S. Farrell, St. Paul, Minn., for respondent.

SATHRE, Judge.

This is an appeal by the Public Service Commission from a judgment of the district

court, fourth judicial district, North Dakota, granting a peremptory writ of mandamus, directed to the Public Service Commission requiring it to decide two certain cases pending before it designated as cases M-968 and M-969. The writ was issued by the Hon. C. L. Foster, one of the judges of said district court and dated February 5, 1957.

On or about May 21, 1955, the Northern Pacific Transport Company, a subsidiary of and owned by the Northern Pacific Railway Company, presented to the Public Service Commission an application for three class A certificates of public convenience and necessity authorizing passenger and freight transportation by motor bus service, between certain points in North Dakota, but of which only two are here for consideration to wit:

"(1) For a Class A Certificate of public convenience and necessity authorizing motor passenger and freight service for the transportation of passengers and their baggage, express, newspapers, milk, cream and general commodities between Valley City, North Dakota, over U. S. Highways 10, and 52 to Sanborn, North Dakota, thence over North Dakota Highway 1 to junction of North Dakota Highway 7, thence over North Dakota Highway 7 to Cooperstown, North Dakota, thence over North Dakota Highway 45 to junction of North Dakota Highway 65, thence over North Dakota Highway 65 to Binford, North Dakota, thence over unnumbered highway to McHenry, North Dakota, and return over the same route, serving all intermediate points and off-route points to Berea.

"(2) For a Class A certificate of public convenience and necessity authorizing motor passenger and freight service for the transportation of passengers and their baggage, express, newspaper, milk, cream and general commodities between Jamestown, North Dakota and Turtle Lake, North Dakota: Over U. S. Highways 52 and 281 to Carrington, North Dakota, thence over North Dakota Highway 7 to junction of North Dakota Highway 41, thence over North Dakota Highway 41 to Turtle Lake, North Dakota, and return over the same route, except that the passenger authority is not sought between Jamestown and Carrington, serving all the intermediate points and off-route points of Parkhurst, Sykeston, Heaton, Bowden, Chaseley and Pickardville; between Carrington, North Dakota and Esmond, North Dakota; Over U. S. Highway 281 to junction of unnumbered highway approximately six miles north of Sheyenne, North Dakota, thence over unnumbered highway to junction of North Dakota Highway 30, thence over North Dakota Highway 30 to Maddock, North Dakota, thence over unnumbered highway or over unnumbered highway and North Dakota Highway 19 as an alternate route for operating convenience only, to Esmond, North Dakota, and return over the same route, serving all intermediate points and off-route points of Guptill, Barlow, Divide, Josephine, Flora and Hesper."

The Public Service Commission assigned docket numbers Case M-968 to that portion of the application designated under (1) and Case M-969 to the application designated (2).

On the same date, May 21, 1955 the Northern Pacific Railway Company filed with the Public Service Commission an application for permission to change the train service of the Northern Pacific Railway Company to and between the towns on the branch lines affected by the application of Northern Pacific Transport Company as set forth in the application hereinbefore referred to. The application of Northern Pacific Railway Company was divided into five separate cases and docketed as cases No. 5326, 5327, 5328, 5329 and 5330. All of these five cases designated as the train cases were heard by the Public Service Commission in the summer and fall

of 1955, and were decided adversely to the Northern Pacific Railway Company in the spring and summer of 1956, and are all pending on appeal to the district courts of this state. No decision was ever made by the Commission in the motor bus cases M-968 and M-969.

Thereafter and on about the 29th day of December 1956 the Northern Pacific Transport Company made application to the district court, fourth judicial district, Burleigh County, North Dakota for a peremptory writ of mandamus directing the Public Service Commission promptly to make findings, conclusions and decisions in cases M-968 and M-969, the same being the cases in which the transport company made application for class A certificates of public convenience and necessity as set forth herein.

The application alleged that cases M-968 and M-969 had not been decided by the Public Service Commission even though they were heard and finally submitted in the fall of 1955, and in spite of repeated requests by the Northern Transport Company, for decisions in these cases; that fifteen months had elapsed since the evidence was received; that approximately one year had passed since the briefs were filed and the cases finally submitted; that the Public Service Commission still had not made findings and conclusions or rendered a decision in either of said cases as required by Section 28-3213, NDRC 1943.

The application further alleged that the Northern Pacific Transport Company had been greatly inconvenienced and damaged because of the long delay without a decision in said cases; and that said Northern Pacific Transport Company had no plain, speedy or adequate remedy in the ordinary course of law. A peremptory writ of mandamus was prayed for directing the Public Service Commission to make findings, conclusions and decisions in cases M-968 and M-969 as required by Section 28-3213, NDRC 1943.

The said application together with an order issued by the said district court was duly served on the Public Service Commission. The order fixed the date for hearing upon the merits of such application before the Hon. C. L. Foster, one of the judges of the said district court, on the 15th day of January 1957 at 10 o'clock A.M. at the court house in the City of Bismarck, North Dakota. The said order directed the Public Service Commission to appear at said time and place and offer such evidence and make such showing as may be proper.

The Public Service Commission served and filed an answer to the said application in the form of a general denial.

The answer admitted that a period of one year or more had passed since the said cases M-968 and M-969 were finally submitted to the Commission and that no decisions had been made therein, but alleged that it had not been possible for the Commission to make decisions in said cases in the proper exercise of its discretion because to grant or deny the applications would endanger or otherwise seriously impair the existing freight and passenger common carrier service afforded to the communities involved.

Hearing was had upon the application of the Northern Pacific Transport Company on January 15, 1957, at the court house in Bismarck, North Dakota, before the Hon. C. L. Foster, one of the district judges of the 4th judicial district. At this hearing it was established that the Northern Pacific Transport Company had filed its application for the two class A certificates designated by the Public Service Commission as cases M-968 and M-969 on May 21, 1955. It was further established that no decision had been made by the Public Service Commission although more than fifteen months had elapsed since the said application was filed with the Commission; and that a year or more had elapsed since briefs were filed and the cases submitted to the Commission for final determination. In the applications for class A certificates the Northern Pacific Transport Company proposed daily passenger service and trans-

portation of certain classes of freight and general commodities by motor bus transportation over highways to and between all points served by paralleling railway lines of the Northern Pacific Railway Company.

On the same date that the application of the Northern Pacific Transport Company was filed with the Public Service Commission the Northern Pacific Railway Company filed an application for permission to curtail daily passenger service and heavy freight service between the points on its railway paralleling the highways over which the Northern Pacific Transport Company proposed to operate by motor bus as set forth in its application.

The attorneys for the Northern Pacific Transport Company stated that it was the desire of the transport company and the Northern Pacific Railway Company to have these applications, that is the application for the two class A certificates of the transport company and the application of the railway company for curtailment of train service to be considered together as "one package". That is they did not want one of the applications granted and the other denied, but wanted both applications either granted or denied. As pointed out the purpose of these two applications was to secure permission to curtail the train service of the branch lines of the railway involved and to substitute motor transport service in its place. The Public Service Commission denied the application of the Northern Pacific Railway Company for permission to curtail the train service. The Commission however made no decision in the matter of the application of the Northern Pacific Transport Company's application for the two class A certificates to which reference has been made herein. At the hearing in district court, the Public Service Commission called no witnesses and introduced no testimony explaining the reason for refusing to make a decision in the motor transport cases.

The district court made a decision from the bench that under the laws of the State of North Dakota applicable to administrative bodies it was the duty of the Public Service Commission to make a decision and file its conclusions and a decision without unnecessary delay and ordered the Commission to make such decision within ten days from the date of the hearing.

Thereafter the time was extended so as to give the Public Service Commission an opportunity to appeal to the Supreme Court. Findings of fact, conclusions of law and order for judgment were made by the trial court and a peremptory writ of mandamus issued directing the Public Service Commission to make findings, conclusions and decisions in said cases M-968 and M-969 on or before February 5, 1957. From this judgment and writ the Public Service Commission appealed to this court.

On this appeal counsel for the Public Service Commission assigns five specifications of error all of which take exception to the findings made by the trial court. None of these are argued to any extent in appellant's brief. The appellant seems to rest its appeal on two propositions:

1. That where an administrative agency has issues pending before it for decision in which such agency may exercise discretion in arriving at a decision, courts may not by a writ of mandamus compel such agency to make such decision.

2. That in the instant cases certain ultimate facts necessary to the final decision in the cases pending before the Commission, are not available until the companion train cases now pending on appeal in the district courts of the State have been finally determined.

Section 28–3213 supra reads as follows:

"Within thirty days after the evidence has been received, briefs filed, and arguments closed in a proceeding before an administrative agency, or as soon thereafter as possible, the agency shall make and state concisely and explicitly its findings of fact and its

separate conclusions of law, and the decision of the agency based upon such findings and conclusions. The agency shall give notice of its decision or determination in any proceeding heard by it by delivering a copy of such decision or determination to all the parties to the proceedings either personally or by registered mail, and if such notice is given by registered mail, the notice shall be deemed given as of the date of the registry."

In the case of Kuhn v. North Dakota Public Service Commission, N.D., 76 N.W. 2d 171, 177 the Commission had failed to make findings of fact as required by Section 28–3213, NDRC 1943, and this court remanded the case to the Commission for the making of such findings.

■ We fail to see any merit in appellant's contention that the Commission could not decide the two cases of the Northern Transport Company until the district court had decided the companion cases of the Northern Pacific Railway Company. The facts and circumstances pertinent to the application for change in the train service have of necessity a bearing upon the application for substituted motor bus service and it would follow logically that the two applications ought to be considered together.

■ The Public Service Commission has discretion in the matter of making decisions in the cases coming before it for consideration and the courts will not interfere unless there is a clear abuse of discretion; but the fact that the Commission has such discretion does not empower it to delay decisions for unnecessary lengths of time without showing a good and valid reason for such delay. In the instant cases no decision has been made although more than a year has elapsed since the issues therein had been finally submitted. The record before us fails to disclose any legal ground for withholding decision for such a long period of time. In the case of Mogaard v. City of Garrison, 47 N.D. 468, 182

N.W. 758, 760 this court in defining the proper function of the writ of mandamus stated as follows:

"Hence, when an inferior tribunal vested with jurisdiction to hear and determine a certain matter or proceedings refuses to act at all, it may be compelled by mandamus to act and make some determination. In other words, the inferior tribunal will be compelled to perform the duty which the law enjoins upon it, namely, hear and determine. * * *

" 'The office of the writ of mandamus is in general to compel the performance of mere ministerial acts prescribed by law. It may also be addressed to subordinate judicial tribunals, to compel them to exercise their functions, but never to require them to decide in a particular manner. It is not, like a writ of error or appeal, a remedy for erroneous decisions. Judges of Oneida Common Pleas v. People, 18 Wend. [79] 92–99, and cases cited. This principle applies to every case where the duty, performance of which is sought to be compelled, is in its nature judicial, or involves the exercise of judicial power or discretion irrespective of the general character of the officer or body to which the writ is addressed. A subordinate body can be directed to act, but not how to act, in a matter as to which it has the right to exercise its judgment.' "

■ When the respondent Northern Pacific Transport Company commenced the instant proceedings, more than a year had elapsed since its application was presented to the Commission, hearing had thereon, testimony taken, briefs filed and the cases finally submitted but no decision had been made by the Commission. Upon the record before us we conclude that the appellant, Public Service Commission has withheld its findings of fact, conclusions of law and decision for an unreasonable length of time without just cause, and in violation

of Section 28–3213, NDRC 1943. We further conclude that the writ of mandamus directing the Commission to make a decision in the cases involved was properly issued by the district court, and accordingly the judgment is affirmed. The Public Service Commission is directed to make and file its findings of fact, conclusions of law and decisions in the pending cases M-968 and M-969 within 20 days after filing of the remittitur with the clerk of the district court.

GRIMSON, C. J., and MORRIS, BURKE and JOHNSON, JJ., concur.